IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAKE SIMMONS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil No. **06-276-JPG** |
| | ) | |
| **ROSALINA GONZALES, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

Plaintiff Jake Simmons is currently in the custody of the Illinois Department of Human Services. Plaintiff's Second Amended Complaint was filed pursuant to 42 U.S.C. § 1983, alleging that Dr. Rosalina Gonzales, Warden Jason C. Garnett and Illinois Department of Corrections Administrative Review Board member Sherry Benton violated his constitutional rights and the Americans with Disabilities Act while he was in the custody of the Illinois Department of Corrections, housed at Lawrence Correctional Center. **(Doc. 44).** At the time plaintiff filed the original complaint, his address was listed as the Department of Human Services **(Doc. 1, p. 5)**, and the Court previously held that Simmons was not a "prisoner" for purposes of 28 U.S.C. § 1915(h), therefore, the Court did not complete a preliminary review of the complaint **(Doc. 6)**.

Defendant Dr. Gonzales is before the Court moving to dismiss the Second Amended Complaint for failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a).

1

**(Doc. 48).** And, in the alternative, Dr. Gonzales moves for summary judgment, arguing that plaintiff's allegations are insufficient to support an Eighth Amendment claim. **(Doc. 62).**

Defendants Benton and Garnett are also before the Court seeking summary judgment for failure to exhaust administrative remedies, as required by as required by 42 U.S.C. § 1997e(a). **(Doc. 50).** By separate motion, Benton and Garnett further argue that the Second Amended Complaint should be dismissed insofar as plaintiff has: (1) failed to state any allegations against defendant Garnett; (2) failed to state a claim under the Americans with Disabilities Act; and (3) failed to state a due process violation. **(Doc. 46).** Defendants Benton and Garnett also assert that they are entitled to qualified immunity, insofar as plaintiff has failed to state a cognizable claim.[1] **(Doc. 50).** Benton and Garnett have also file a motion for summary judgment, arguing: (1) that Benton lacked sufficient personal involvement for liability to attach under the Section 1983 constitutional claims; (2) and plaintiff stated in his deposition that he did not wish to proceed with his claims against Garnett. **(Doc. 63).**

In response, plaintiff Simmons has filed two similar responses, in essence arguing that the failure of prison officials to respond to his July 2004 grievance, and their rejection of his January 2005 grievance, rendered administrative remedies unavailable and violated his right to due process. Moreover, plaintiff's affidavit states that he was released from Department of Corrections custody when he filed this action, which obviates the exhaustion requirement. **(Docs. 53 and 54).** The defendants have not filed any replies or otherwise countered plaintiff's argument that the exhaustion requirement is inapplicable to his situation.

---

[1] Benton and Garnett present their qualified immunity argument in their motion for summary judgment, which chiefly addresses the exhaustion issue, rather than raising it in their motion for summary judgment, which addresses the underlying basis for qualified immunity.

2

**Plaintiff's Second Amended Complaint**

Plaintiff alleges that in June 2004 Dr. Gonzales ordered that plaintiff's wheelchair be taken away, and that plaintiff be issued a walker. According to plaintiff, he was issued a broken walker that was not steady, and when Dr. Gonzales was shown the walker, "she then walked away, stating that she will have somebody check to see if it is broke" [sic]. **(Doc. 44, p. 3).** Correctional officers confiscated the walker, leaving plaintiff without an assistive device, which resulted in plaintiff repeatedly falling and injuring himself. Plaintiff filed a grievance regarding Dr. Gonzales, but he never received a response. Plaintiff subsequently fell and he thinks he broke his hip. Dr. Gonzales went to plaintiff's cell to treat him after he fell, and sent plaintiff for x-rays. Plaintiff claims that Dr. Gonzales denied him an assistive device in violation of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), as well as the Eighth Amendment (which is applicable to the states via the Fourteenth Amendment). **(Doc. 44, p. 5).** Plaintiff further alleges that, after he was transferred to Menard Correctional Center[2], Sherry Benton, a member of the Administrative Review Board denied a January 2005 complaint regarding his treatment at Lawrence Correctional Center because his grievance was out of time, which plaintiff contends violated his right to due process under the Fourteenth Amendment. **(Doc. 44, pp. 7-8).**

Plaintiff incorporates by reference the documents appended to the original complaint **(Doc. 1-2).** Among those documents is a medical note reflecting that on June 7, 2004, Dr.

---

[2]Plaintiff indicates that he was transferred to Menard Correctional Center due to the retaliation of "administrative staff." **(Doc. 44, p. 7).** Plaintiff does not specify any particular individual, and he does not specifically enumerate a First Amendment retaliation claim. Therefore, no such claim is recognized by this Court. Similarly, plaintiff's mere mention of being denied grievance forms and writing supplies at Menard **(Doc. 44, p. 7)** are insufficient to state a legal claim.

Gonzales authorized a walker, but specifically not a wheelchair. Another medical note indicates that on July 27, 2004, Dr. Gonzales asked to have plaintiff's walker to see if it was broken. A disciplinary report also dated July 27, 2004, indicates that plaintiff beat his walker against the wall, declaring that he did not want the walker, he wanted a wheelchair. An August 2004 radiologist's report indicates plaintiff's left hip and femur were not fractured or dislocated. The documents also include a grievance dated January 14, 2005, referencing a July 29, 2004, grievance regarding Dr. Gonzales leaving plaintiff in his cell without an assistive device and thereby endangering his health and safety. A response from defendant Benton is included, reflecting that it was too late to raise such issues, and that plaintiff should have used a proper grievance form and included a copy of the grievance and counselor's response.

## Exhaustion of Administrative Remedies

Exhaustion of administrative remedies in accordance with 42 U.S.C. § 1997e(a), while not jurisdictional per se, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. ***Woodford v. Ngo,* 548 U.S. 81, 84-85 (2006); *Booth v. Churner*, 532 U.S. 731, 739 (2001)*; Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002);*Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir. 1999).**

"Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." ***Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000).** "Defendants may waive or forfeit reliance on [42 U.S.C.] § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations." ***Perez,* 182 F.3d at 536.**

The rules governing the filing and prosecution of a grievance, including the appeal, must be followed to achieve exhaustion; substantial compliance is insufficient. ***Lewis v. Washington* 300 F.3d 829, 833-834 (7th Cir. 2002).** When prison officials fail to respond to an inmate grievance that remedy is considered exhausted because it has been rendered "unavailable." ***Id.*** Similarly, a remedy that prison officials impede a prisoner from using is "unavailable." ***Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Dole v. Chandler*, 438 F.3d 804, 811-812 (7th Cir. 2006).**

Recently, in *Pavey v. Conley*, 528 F.3d 494 (7th Cir. 2008), the Court of Appeals for the Seventh Circuit re-emphasized that the exhaustion issue must be resolved before discovery may proceed. The appellate court stated:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion (and only to exhaustion) he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, he will then determine whether (a) the plaintiff has unexhausted remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

***Pavey*, 528 F.3d at 497-498.**

Of course, in accordance with Federal Rule of Civil Procedure 78, the Court may determine motions upon written statements of support and opposition, without holding a hearing. In this instance, a hearing does not appear necessary, as the parties have had an opportunity to

fully brief their positions regarding exhaustion and there are no questions of material fact remaining regarding exhaustion, only questions of law. If the District Court does not agree, the question of exhaustion must be determined, and the Court can re-refer this issue for an evidentiary hearing, if necessary.

In pertinent part, Section 1997e states:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, *by a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted.

**42 U.S.C. § 1997e(a) (emphasis added).** When determining the applicability of the exhaustion requirement, a plaintiff's status is determined at the time the action is brought, meaning filed. ***Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998); *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004).** "Under the [Prison Litigation Reform Act], a prisoner is defined as 'any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.' 42 U.S.C. § 1997e(h)." ***Witzke*, 376 F.3d at 750.** It is undisputed that at the time this action was filed, plaintiff was on supervised release and in the custody of the Department of Human Services, not the Department of Corrections. Therefore, the exhaustion requirement is inapplicable to plaintiff and this action. Accordingly, the defendants' motions seeking dismissal and/or summary judgment on the basis of plaintiff's failure to exhaust administrative remedies **(Docs. 48 and 50)** should be denied.

## Dr. Gonzales

Dr. Rosalina Gonzales moves for summary judgment, arguing that plaintiff's allegations

6

are insufficient to support an Eighth Amendment claim. **(Doc. 62).** More specifically, Dr. Gonzales contends she never denied plaintiff an assistive device, and in that respect, plaintiff merely prefers a wheelchair to a walker. Insofar as plaintiff purportedly fell on two occasions, Doctor Gonzales notes that on the first occasion plaintiff has conceded that he did not seek medical attention, and on the second occasion Dr. Gonzales treated him. Similarly, with respect to the Americans with Disabilities claim, Dr. Gonzales observes that at no time was plaintiff denied an assistive device, refused medical service or discriminated against.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *see Celotex Corp. v. Catrett*, **477 U.S. 317 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort Wayne*, **91 F.3d 922, 931 (7th Cir. 1996).**

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings, more substantial evidence must be presented at this stage. "The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, **497 U.S. 871, 888 (1990).** Moreover, a genuine issue of material fact is not shown

7

by the mere existence of "some alleged factual dispute between the parties" (*Anderson*, 477 U.S. at 247), or by "some metaphysical doubt as to the material facts, (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))."

### The Eighth Amendment

Generally, the Eighth Amendment obligates prison officials to "provide humane conditions of confinement; . . . [to] ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Estelle v. Gamble*, 429 U.S. 97 (1976). The Eighth Amendment is violated when an official exhibits "deliberate indifference"– when an official "knows of and disregards an excessive risk to inmate health or safety[;] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This standard is subjective, and is the equivalent of recklessness in the criminal law sense. *Id.*; *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996).

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

Mere negligence will not create liability, nor will the provision of medical treatment other than that preferred by the inmate. *Estelle*, 429 U.S. at 107; *Burns v. Head Jailor*, 576 F. Supp. 618 (N.D. Ill. 1984). Also, a difference of medical opinion or even a showing of medical

8

malpractice will not alone suffice. *See Estate of Cole Pardue v. Fromm,* **94 F.3d 254, 256 (7th Cir.1996).**

The Second Amended Complaint alleges that in June 2004 Dr. Gonzales ordered that plaintiff's wheelchair be taken away, and that plaintiff be issued a walker. According to plaintiff, he was issued a broken walker that was not steady, and when Dr. Gonzales was shown the walker, "she then walked away, stating that she will have somebody check to see if it is broke" [sic]. **(Doc. 44, p. 3).** Plaintiff's deposition testimony indicates that plaintiff disagreed with Dr. Gonzales's decision to trade the wheelchair for a walker, although plaintiff had been in a physical therapy program where he practiced walking; plaintiff felt he was being pushed too fast. **(Doc. 63-3, pp. 12-13).**

Dr. Gonzales's affidavit and medical records establish that plaintiff has paresis, a partial weakness in his legs, which enables him to walk with assistance, and that Dr. Gonzales did order that plaintiff be given a walker. **(Doc. 62-3, p. 1; Doc. 62-4; Doc. 62-5).** Plaintiff does not dispute those facts, or present any argument or evidence indicating why a wheelchair would be required, as opposed to a walker, except that he felt Dr. Gonzales was pushing his recovery along too fast. **(Doc. 63-3, pp. 12-13).** When Dr. Gonzales learned that the walker may have been broken, she ordered that it be examined. **(Doc. 62-7).** Plaintiff's walker was taken, but not by Dr. Gonzales; rather, a correctional officer took the walker after plaintiff smashed it in anger over having his wheelchair replaced with a walker. **(Docs. 62-8; 62-9; 62-11; 62-12; and 63-4, pp. 9-10).** Plaintiff subsequently refused the walker. **(Doc. 62-15).**

Dr. Gonzales clearly did not deny plaintiff medical treatment, in that she <u>did</u> provide plaintiff with an assistive device. Plaintiff merely disagrees with Dr. Gonzales's course of

9

treatment, which does not amount to an Eighth Amendment violation. "Medical decisions that may be characterized as 'classic example [s] of matter[s] for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the Amendment's purview. Such matters are questions of tort, not constitutional law." ***Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).** Furthermore, Dr. Gonzales had <u>nothing</u> to do with it being confiscated or not returned. Personal involvement is required for liability to attach under 42 U.S.C. § 1983. Also, Dr. Gonzales opined that there was no medical need for plaintiff to have a substitute walker while the first one was being repaired, between July 27 and August 5, 2004 – he was in segregation, confined to his cell. **(Doc. 62-3, pp. 2-3).**

The Second Amended Complaint alleges that after correctional officers confiscated the walker, plaintiff was without an assistive device, which resulted in plaintiff repeatedly falling and injuring himself. **(Doc. 44, p 4).** Plaintiff does not specify any particular dates or resulting harm. Moreover, he does not allege that Dr. Gonzales had notice of any falls or injuries. As previously noted, Dr. Gonzales did not deem a substitute walker medically necessary. In any event, according to Dr. Gonzales's unrefuted affidavit, there are no medical records indicating any reported falls or injuries, until the August 10, 2004, fall detailed in the complaint, where plaintiff injured his hip. **(*See* Doc. 62-3, pp. 3-4).** Again, without notice or personal involvement by Dr. Gonzales, there is no liability under the Eighth Amendment.

Dr. Gonzales concedes that plaintiff fell on August 10, 2008, as alleged. **(Doc. 62-3, p. 3).** However, Dr. Gonzales's uncontroverted affidavit and supporting medical documentation establish that Dr. Gonzales treated plaintiff, and that there was no fracture or dislocation, as suggested by plaintiff. **(Doc. 62-3, p. 3; Doc. 62-18).** The Second Amended Complaint and

plaintiff's deposition testimony acknowledge this treatment, so the Court construes this incident as an example of subsequent harm stemming from the denial of a wheelchair. (*See* **Doc. 44, pp. 4-5; and Doc. 63-3, pp. 5-7 and 10).** In any event, there is no viable Eighth Amendment claim relative to the August 10, 2004, fall. Other miscellaneous medical issues, such as falls after receiving the walker, pressure sores and chest pain, are mentioned in the Second Amended Complaint, but plaintiff makes clear in his deposition testimony that Dr. Gonzales was not personally made aware of or otherwise involved in the treatment of those issues. (*See* **Doc. 63-3, p. 5, 7-8 and 13-14).**

### The ADA

Insofar as plaintiff alleges the aforestated medical issues– the issuance of a walker in place of a wheelchair, in particular– violate the Americans with Disabilities Act, his claim is not well taken.

Title II of the ADA prevents a "public entity" from discriminating against disabled persons in the provision of services (*see* 42 U.S.C. § 12132), and Title III of the ADA prevents such discrimination in "any place of public accommodation" (s*ee* 42 U.S.C. § 12182(a)). Defendant Gonzales does not concede that the ADA is applicable to him, but he argues that even if applicable, plaintiff has failed to state a viable ADA claim.

Although medical services arguably fall under the ambit of the ADA, the ADA is aimed at "exclusion" and "denial"– discrimination– and is not violated by a prison's simply failing to attend to the medical needs of a disabled person. **42 U.S.C. § 12132;** *Pennsylvania Department of Corrections v. Yeskey,* **524 U.S. 206, 209 (1998); and** *Bryant v. Madigan,* **84 F.3d 246, 249 (7th Cir.1996).** The ADA does not create a remedy for medical malpractice. *Bryant,* **84 F.3d at**

11

249. Plaintiff's medical claims have already been analyzed above; that analysis is equally relevant to the ADA claim. A disagreement over the proper course of medical treatment, without more, is not actionable under the ADA, and the uncontroverted evidence establishes that there was no denial of medical treatment. And, there is no allegation of discrimination, in the sense that others received different treatment under the same or similar circumstances.

Therefore, Dr. Gonzales's motion for summary judgement as to the Eighth Amendment claim and ADA claim lodged against her **(Doc. 62)** should be granted in all respects.

### Warden Jason Garnett

Defendant Garnett moves to dismiss the Second Amended Complaint because it fails to make any allegations against him in the body of the complaint. **(Docs. 46and 47).** In addition, Garnett's motion for summary judgment presents plaintiff's deposition, in which plaintiff voluntary dismisses defendant Garnett. **(Doc. 63-4, p. 6).**

Plaintiff's sworn, transcribed deposition testimony unequivocally dismisses defendant Garnett. .**(Doc. 63-4, p. 6).** Therefore, in accordance with Federal Rule of Civil Procedure 41(a)(1), Garnett should be voluntarily dismissed, without prejudice. In the event the District Court does not dismiss defendant Garnett, the following analysis of his motion to dismiss is offered in the interest of judicial economy.

When deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all factual allegations in a complaint and draw all reasonable inferences in a plaintiff's favor. ***See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.,* 167 F.3d 1170, 1173 (7th Cir. 1999).** The Supreme Court recently stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

***Bell Atlantic v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-1965 (2007) (internal citations and parenthetical information omitted).**

More to the point, personal involvement is required for liability to attach under 42 U.S.C. § 1983. A defendant must be 'personally responsible for the deprivation of a constitutional right.' " ***Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001),** *quoting **Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)*; *see also **Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).** "The purpose of § 1983 is to deter state actors ... from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." ***Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)).** Accordingly, the respondeat superior theory of liability cannot be utilized in a Section 1983 action. ***Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).**

Garnett is listed as a party, and he is identified as the warden at Lawrence Correctional Center, and he is described as "legally responsible for the operations of Lawrence Correctional Center and for the welfare of all inmates at that prison. **(Doc. 44, p. 2).** There is no other mention of Garnett in the Second Amended Complaint. Plaintiff's deposition testimony did not implicate Garnett in any respect. **(*See* Docs. 63-3 and 63-4).** Plaintiff is clearly attempting to attach liability to Garnet using nothing more than the respondeat superior theory.

13

With respect to plaintiff's ADA claim, defendant Garnett correctly observes that, because he is sued in his individual and personal capacity **(Doc. 44, p. 2)**, he is not subject to suit under the ADA. The ADA only authorizes suits against public entities. **42 U.S.C. § 12131-12133; and *United States v. Georgia*, 546 U.S. 151, 154 (2006).**

Therefore, defendant Garnet's motion to dismiss **(Doc. 46)** should be granted, with prejudice relative to the ADA claim, and without prejudice relative to the failure to allege personal involvement.

### Sherry Benton

Defendant Sherry Benton moves to dismiss the Second Amended Complaint for failure to state a viable claim against her. **(Docs. 46 and 47).** In addition, Benton moves for summary judgment, on similar grounds, now supported by her affidavit and plaintiff's deposition testimony. Each motion will be addressed in turn.

As stated above, when deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all factual allegations in a complaint and draw all reasonable inferences in a plaintiff's favor. ***See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).**

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

***Bell Atlantic v. Twombly*, \_\_ U.S. \_\_, 127 S.Ct. 1955, 1964-1965 (2007) (internal citations and parenthetical information omitted).**

Like defendant Garnett, defendant Benton argues that, because she is sued in her individual and personal capacity **(Doc. 44, p. 2)**, she is not subject to suit under the ADA. Benton is correct. The ADA only authorizes suits against public entities. **42 U.S.C. § 12131-12133; and *United States v. Georgia*, 546 U.S. 151, 154 (2006).**

Benton further argues that plaintiff has failed to state a claim for a violation of his due process rights. More specifically, citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995), she contends the prison's grievance procedures do not give rise to a liberty interest protected by the due process clause of the Fourteenth Amendment.

Benton is correct. "A state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." ***Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1995).** The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, in and of itself, violate the Constitution. ***Maust v. Headley*, 959 F.2d 644, 648 (7th Cir.1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir.1982).** Therefore, plaintiff's allegations that his grievance was untimely and/or that he received no reply to it at all, fail to state a claim upon which relief may be granted.

Therefore, defendant Benton's motion to dismiss **(Doc. 46)** should be granted in all respects, with prejudice. In the event Benton's motion to dismiss is not granted, the supplemental evidence submitted in support of her motion for summary judgment establishes she is entitled to summary judgment.

Plaintiff's deposition testimony clarifies that Benton had no personal involvement in the taking of the wheelchair or the walker. **(Doc. 63-4, p. 5).** Rather, plaintiff explains that he sent a letter/grievance directly to Benton, who is chairperson of the Administrative Review Board,

15

hoping to have Benton overturn Dr. Gonzales's decision swapping plaintiff's wheelchair for a walker. **(Doc. 63-4, pp. 6-8).** According to Benton's affidavit, and as the letter/grievance itself shows, plaintiff's complaint fell outside the 60-day period for filing a grievance about that particular decision by Dr. Gonzales, and proper procedures were not followed, as the underlying July 29, 2004 grievance had not been submitted to the Administrative Review Board. **(Doc. 63-2; and Doc. 1-2).** Moreover, Benton has no medical training and her position does not give her authority to overrule medical decisions made by plaintiff's treating physician, Dr. Gonzales. **(Doc. 63-2).**

## Recommendation

For the aforestated reasons, it is the recommendation of this Court that:

1. The defendants' motions seeking dismissal and/or summary judgment on the basis of plaintiff's failure to exhaust administrative remedies **(Docs. 48 and 50)** should be denied;

2. Dr. Gonzales's motion for summary judgement as to the Eighth Amendment claim and ADA claim lodged against her **(Doc. 62)** should be granted in all respects;

3. Defendant Garnett's motion for summary judgment **(Doc. 63)**, which is actually a transmission of plaintiff's oral motion to voluntarily dismiss Garnett should be granted and Garnett should be dismissed without prejudice; in the alternative, Garnet's motion to dismiss **(Doc. 46)** should be granted, with prejudice relative to the ADA claim, and without prejudice relative to the failure to allege personal involvement; and

4. Defendant Benton's motion to dismiss **(Doc. 46)** should be granted in all respects, with prejudice; in the alternative, Benton's motion for summary judgment **(Doc. 63)** should be granted.

If all of the aforementioned recommendations are adopted, all claims against all defendants would be disposed of and entry of final judgment would be appropriate.

**DATED: August 14, 2008**

                                        **s/ Clifford J. Proud**
                                        **CLIFFORD J. PROUD**
                                        **U. S. MAGISTRATE JUDGE**

### Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **August 30, 2008**. No extensions will be granted.